UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
                                           :
**Ace American Insurance Co., et al.,**    :
                                           :
                          Petitioners,     :     11 Civ. 8862 (ALC)
                                           :
            -against-                      :     <u>**OPINION & ORDER**</u>
                                           :
**Christiana Insurance, LLC,**             :
                                           :
                          Respondent.      X
                                           
------------------------------------------

**ANDREW L. CARTER, JR., District Judge:**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4-12-12

   Petitioners Ace American Insurance Co., et al., bring this petition to confirm an arbitration award (the "Award") in their favor against Respondent Christiana Insurance LLC. Respondent opposes Petitioners' motion and cross-petitions to vacate the Award. Because Respondent fails to set forth any legitimate grounds for vacating the Award, Respondent's cross-petition is DENIED, and Petitioners' petition is GRANTED.

## BACKGROUND

   This dispute centers around a claim under an insurance policy (the "Policy") issued to DuPont by its captive insurer, Christiana Insurance LLC ("Christiana" or "Respondent"). Under the Policy, Christiana provided DuPont with first-party insurance covering property damage and business interruption during the 2008–2009 policy year. (Cross-Petition to Vacate dated January 13, 2012 ("Cross-Pet.") ¶ 15). This Policy was reinsured by Petitioners ("Reinsurers") up to

1

$500 million and was subject to a $200 million deductible. (Id.). The Policy provided that any dispute between the parties should be resolved through arbitration. (Id.).

In September 2008, Hurricane Ike caused substantial property damage to DuPont's facilities in Texas and also shut down business operations for many months, thereby causing significant losses. (Id. at ¶ 18). The parties were unable to resolve the valuation of these losses, and in January 2011, after Christiana made a demand for arbitration, the parties executed a written "Arbitration Agreement." (Id. at ¶ 23). Prior to the execution of the Arbitration Agreement, Reinsurers, in what they describe as a "leap of faith," paid $50 million to Christiania based on the latter's representation that the total claim value would exceed $250 million. (Id. at ¶ 21; Exhibit G to Sylvester Dec. at 26.) The $50 million payment represented the difference between the purported total claim value and the $200 million deductible. Reinsurers subsequently determined that Christiana had not substantiated that covered losses would exceed $250 million and asserted a counterclaim in the arbitration for the return of that $50 million payment. (Exhibit G to Sylvester Dec. at 26). The Arbitration Agreement provides, in pertinent part, that:

- "Christiana and the Reinsurers have been unable to reach agreement regarding the reinsurance coverage owed to Christiana under the related reinsurance certificates respecting DuPont's Hurricane Ike claim (the "Dispute")."

- "The Parties shall submit the Dispute to final and binding arbitration, subject to the right to challenge any award made by the Tribunal on the basis of those grounds provided by law . . . ."

- "The Tribunal shall not be bound by any formal rules of evidence. The Tribunal shall have the power to fix procedural rules relating to the conduct of the Arbitration."

- "The Tribunal shall issue a reasoned, written explanation of its award as promptly as practicable after the conclusion of post-hearing briefing . . . ."

2

- "The Parties agree that the Tribunal's award shall be the final and binding resolution of the Dispute. There shall be no appeal from the Tribunal's award on any grounds other than those provided by law."

Exhibit C to Sylvester Dec.

In the Arbitration, Christiana claimed $411 million in covered losses and sought $161 million under the Policy, which took into account the self-retained $200 million deductible and the $50 million payment previously received from the Reinsurers. (Cross-Pet. ¶ 24). Pursuant to the Arbitration Agreement, the Arbitration consisted of expedited discovery (including confidential production of documents and limited depositions), pre-hearing briefing, an eight-day arbitration hearing in Wilmington, Delaware (the "Hearing"), two rounds of post-hearing briefing, and a post-hearing oral argument in New York. (Id. at ¶ 25).

On November 3, 2011, the Tribunal issued a unanimous decision in which it explained that "the Panel can do no more than leave the parties where they found them," since Christiana failed to sustain its burden of proof that its losses from Hurricane Ike exceeded $250 million and the Reinsurers failed to sustain their burden of proving the amount of the loss was less than $250 million. (Exhibit Q to Sylvester Dec. at 12). On November 30, 2011, Christiana filed a Motion for Clarification and/or Reconsideration with the Tribunal. On December 15, 2011, the Tribunal issued a unanimous decision in which it explained that it was functus officio and therefore no longer empowered to hear any requests to reconsider any aspect of the Award. (Exhibit U to Sylvester Dec. at 3–4). However, the Tribunal did correct factual errors appearing on the face of the Award, namely the misstatement that the Reinsurers had paid $250 million instead of $50 million. (Id. at 3).[1] The Tribunal reiterated that Christiana "had received all the compensation it

---

[1] It is unclear why the Tribunal continued to assert that Christiana had to establish that its loss exceeded $250 million, while simultaneously noting that the deductible, or the "self-insured retention," is $200 million. (Exhibit U to Sylvester Dec. at 3–4.).

3

was entitled to receive until it established that its loss exceeded $250 million." (Id.). Following the Tribunal's December 15, 2011 decision, the Reinsurers filed an Amended Petition to confirm the Arbitration Award. Christiana opposes this petition and has filed a cross-petition to vacate the Arbitration Award.

## DISCUSSION

A. Applicable Legal Standards

"The court's function in confirming or vacating an arbitration award is severely limited." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (citation and alterations omitted) (describing the "twin goals or arbitration" as "settling disputes efficiently and avoiding long and expensive litigation").[2] "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (citations and alterations omitted). Moreover, a party moving to vacate an arbitration award bears a "heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004).

Section 10(a) of the Federal Arbitration Act ("FAA") sets forth four bases for vacatur of an arbitration award:

---

[2] The FAA does not "independently confer subject matter jurisdiction on the federal courts." Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir. 2009). "[T]here must be an independent basis of jurisdiction before a district court may entertain petitions" to confirm or vacate an award under the FAA. Id. (internal quotation marks). In this case, the court has subject-matter jurisdiction under 28 U.S.C. § 1332.

4

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Second Circuit, as a "judicial gloss" on the aforementioned bases for vacatur, recognizes two additional grounds upon which an award may be vacated: namely, where the arbitrator's award is in "manifest disregard" of the law or the terms of the relevant agreement between the parties. Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 451–52 (2d Cir. 2011). Respondent argues that it is entitled to vacatur of the Arbitration Award under §10(a)(3), §10(a)(4), and the "manifest disregard" doctrines.

B. Section 10(a)(3)

Section 10(a)(3) of the FAA provides, in pertinent part, that a court may vacate an arbitration award if "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misconduct by which the rights of the party have been prejudiced." 9 U.S.C. § 10(a)(3). "Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997). Fundamental fairness requires that an arbitrator "give each of the parties to the dispute an adequate opportunity to present its evidence and argument," but does not require that an

5

arbitrator "hear all the evidence proffered by a party." Id. (citation omitted). "Misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." Alexander Julian, Inc. v. Mimco, Inc., 29 Fed. Appx. 700, 703 (2d Cir. 2002). In short, "[f]ederal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair." Tempo Shain, 120 F.3d at 20 (citation omitted).

Here, Christiana argues that the Tribunal improperly refused to hear pertinent and material evidence of the parties' prior course of dealings in order to resolve an ambiguous term in the Policy. Specifically, the parties disputed how to calculate the amount of depreciation when determining the actual cash value ("ACV") of the DuPont facility's property damage. In support of its view, Christiana sought to introduce evidence of a prior insurance claim involving Christiana and some (but not all) of the Reinsurers arising from losses from Hurricane Katrina (the "Katrina claim"). Christiana maintained that the ACV language of the policy under which the Katrina claim was covered is identical to the ACV language of the Policy at issue in this case, and so the prior interpretation of the ACV language should be considered when interpreting the same language in the current Policy. (Exhibit D to Sylvester Dec. at 2). Christiana also claimed that this prior course of dealings bolstered the credibility of one if its witness's anticipated testimony. (Id.). Prior to the hearing, the Reinsurers filed a letter-motion asking the Tribunal to preclude Christiana from introducing evidence concerning the Katrina claim because this information was subject to a confidentiality agreement included in the prior settlement agreement. (Exhibit E to Sylvester Dec. at 1–2). Over Christiana's objections, the Tribunal orally ruled that Christiana was prohibited from admitting any Katrina-related ACV claims-calculation evidence unless the Reinsurers "opened the door" on the subject. (Sylvester Dec. ¶

5). When, at the hearing, Christiana believed one of the Reinsurers' witnesses did in fact "open the door" and sought to submit rebuttal evidence relating to the parties' prior course of dealings in applying the ACV language used in the Katrina claim, the Tribunal again rejected Christiana's request. (Id.).

The Tribunal's refusal to hear this prior course of dealing evidence does not provide a basis to vacate the Arbitration Award under § 10(a)(3) of the FAA. Under this provision, a federal court's review "is restricted to determining whether [a] procedure was fundamentally unfair." See Tempo Shain, 120 F.3d at 20 (citation omitted). The Tribunal gave Christiana an adequate opportunity to argue why the Katrina-related evidence should be admitted. The Reinsurers continued to assert that this evidence was barred by the confidentiality agreement and disputed that they ever "opened the door" for Christiana to offer the evidence in rebuttal. (Reinsurers' Memorandum of Law in Opposition of Vacatur at 28). That the Tribunal did not ultimately hear all the evidence proffered by Christiana and was not persuaded by its arguments does not make the Tribunal's procedure fundamentally unfair. See Tempo Shain, 120 F.3d at 20 (citation omitted). The Reinsurers' argument that the Katrina-related evidence was barred by the confidentiality agreement provides more than a colorable justification for the outcome reached by the Tribunal. Accordingly, Christiana has not met its heavy burden of showing that the Arbitration Award should be vacated under § 10(a)(3).

## C. Section 10(a)(4)

Christiana also seeks to vacate the award pursuant to § 10(a)(4) of the FAA, which provides for vacatur if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9

7

U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4)." Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003) (citation omitted). The court's "inquiry focuses on whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." Id. (citation omitted). The primary concern of the reviewing court is "whether the arbitrators acted within the scope of their authority, or whether the arbitral award is merely the arbitrators' own brand of justice." Id. (citation and alterations omitted). In answering this question, the arbitrator's decision is afforded great deference: "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." Reliastar Life Ins. Co. v. EMC Nat'l Life Co., 564 F.3d 81, 86 (2d Cir. 2009).

Here, Christiana argues that vacatur is appropriate under § 10(a)(4) because the Tribunal "so imperfectly execut[ed] the arbitrators' powers such that a mutual, final and definite award was not made." (Respondent's Memorandum in Support of Vacatur at 20). Specifically, Christiana argues that the Tribunal "imperfectly executed its powers by applying an unspecified and improper burden of proof standard." (Id. at 28). According to Christiana, the Tribunal did not identify what burden of proof standard was being applied, cite any legal precedent justifying the use of that burden of proof standard, or discuss how the evidence of damages submitted failed to meet that standard. (Resp. Memo. in Support at 28). This argument is unavailing. Vacatur under § 10(a)(4) is "accorded the narrowest of readings" and "focuses on whether the arbitrators had the power . . . to reach a certain issue." Banco de Seguros, 344 F.3d at 262.

8

Christiana does not claim—by citing to the parties' submissions or arbitration agreement—that the Tribunal lacked the power under the Arbitration Agreement to decide which party bore the burden of proof in the arbitration, or that the Tribunal exceeded its power by not choosing to apply a specific burden of proof standard. On the contrary, the parties' Arbitration Agreement is broad in scope and empowered the Tribunal to resolve the dispute regarding the reinsurance coverage owed to Christiana under the relevant insurance policies. (Exhibit C to Sylvester Dec. at ¶ 1). Even if the Court were convinced that the Tribunal committed serious error in not articulating the burden of proof, the Tribunal's decision will not be vacated on this ground as long as the Tribunal was arguably acting within the scope of its authority. See Reliastar, 564 F.3d at 86. Because the Tribunal was arguably acting within the scope its authority, the Arbitration Award will not be vacated under § 10(a)(4).

D. "Manifest Disregard" of Law

Christiana additionally argues that the Arbitration Award should be vacated because it was rendered in "manifest disregard of the law." The "manifest disregard" standard requires that the challenging party satisfy two prongs: (1) that the "governing law" was "well defined, explicit, and clearly applicable," and (2) that the arbitrator knew about "the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 452 (2d Cir. 2011) (citations omitted). The "manifest disregard" doctrine is "severely limited," and "extreme[ly] deferen[tial] to arbitrators." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) (citations omitted). The Second Circuit has described the "manifest disregard" doctrine as "a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators

9

is apparent, but where none of the provisions of the FAA apply." Id. (citation omitted). Indeed, courts will not vacate an award under this standard "because of a simple error in law or a failure by the arbitrators to understand or apply it but only when a party clearly demonstrates that the panel intentionally defied the law." STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011) (citation omitted) (upholding an arbitration award where the arbitrators did not explain the reason for their decision, but where the court could discern a valid ground for it).

The bulk of Christiana's arguments that the Arbitration Award should be vacated relies on the "manifest disregard" of the law doctrine. First, Christiana argues that the Tribunal "manifestly disregarded" applicable contract principles in interpreting the ACV provision of the Policy. Specifically, Christiana contends that the Panel should have applied the doctrine of contra proferentem, which holds that contract ambiguities should be construed against the drafters, which Christiana states is the Reinsurers. (Resp. Memo. in Support at 22). The Reinsurers disagree, claiming that Christiana suggested the ambiguous language. (Pet. Memo in Opposition at 17). The Tribunal's written decision states that both parties had a hand in drafting the disputed language but shows that the final wording was in fact proposed by Christiana. (Exhibit Q to Sylvester Dec. at 5). In any event, resolution of this factual dispute has no bearing on whether the Arbitration Award should be vacated, because Christiana has failed to satisfy the first prong of the "manifest disregard" doctrine: Christiana has not shown that the Tribunal was obligated to apply the contra proferentem doctrine or any other "governing law." Even if Christiana could show that the contra proferentem doctrine was somehow binding on the Tribunal, the mere fact that Tribunal disagreed with Christiana's proposed application of that doctrine under the facts of this case is plainly insufficient to support vacatur of the award.

Second, Christiana argues that the Tribunal "manifestly disregarded" the law in ruling on Christiana's "business interruption" claims. (Resp. Memo in Support at 32, 42). Specifically, Christiana claims that it provided the Tribunal with relevant case law describing that lost business income needs to be proved only by a "reasonable degree of certainty" as opposed to being proved with "absolute certainty" or "scientific rigor." (Id. at 32). Christiana claims that the Tribunal never discussed the case law on burden of proof and never specified what burden of proof standard it applied in reaching its conclusion that Christiana had not sustained its burden of proving the amount of its loss. This argument likewise does not support vacatur. First, Christiana does not show that the Tribunal was bound by any "governing law" regarding proof of damages. Second, even assuming that the Tribunal was obligated to follow the cases cited by Christiana, the fact that the Tribunal did not explain why Christiana failed to satisfy its burden of proof does not "clearly demonstrate" that the Tribunal "intentionally defied" those cases. See STMicroelectronics, 648 at 78 (citation omitted). The Tribunal's finding that Christiana's proof of business loss claim failed "to account for the fact the period during which its plants were impacted by the hurricane coincided with one of the worst economic downturns in our nation's history" provides a more than colorable justification for the outcome reached. (Exhibit Q to Sylvester Dec. at 9).

E. "Manifest Disregard" of Parties' Agreement

An arbitrator's award may also be vacated "where the arbitrator's award is in manifest disregard of the terms of the parties' relevant agreement." Schwartz, 665 F.3d at 452 (quoting Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997)). The Second Circuit "appl[ies] a notion of manifest disregard to the terms of the agreement analogous to that employed in the context of manifest disregard of the law." Id. "Thus,

11

interpretation of the contract terms is within the province of the arbitrator and will not be overruled simply because [courts] disagree with that interpretation." Id. (quotation marks and alterations omitted).

Christiana argues that the Tribunal "manifestly disregarded" the parties' arbitration agreement in ruling on the business interruption claims. (Resp. Memo in Support at 39). As an initial matter, the Court notes that there appears to be no authority—and Christiana cites none—holding that this doctrine applies where an arbitration panel is alleged to have manifestly disregarded an arbitration agreement, as opposed to the terms of a contract that it was being asked to interpret. See, e.g., Schwartz, 665 F.3d at 453 (rejecting argument that panel had manifestly disregarded terms of settlement agreement and release); Yusuf Ahmed, 126 F.3d at 25 (rejecting argument that arbitrator had manifestly disregarded the terms of various contract provisions). By contrast, here, the Tribunal was not charged with interpreting the terms of the Arbitration Agreement.

Rather, Christiana argues that the Tribunal manifestly disregarded the parties' arbitration agreement in ruling on the business interruption claims because the Agreement called for a "streamlined arbitration process" that would resolve the disputed claims fast and efficiently. Christiana argues that the Tribunal acted inconsistently with this mandate by rejecting two of Christiana's witnesses because their testimony was presented by deposition instead of live testimony. (Resp. Memo in Support at 41). In addition, Christiana argues that the Tribunal manifestly disregarded the parties' arbitration agreement by not providing a "reasoned basis for rejecting" Christiana's business interruption losses for its Olefin's business, but instead "lumped the Olefins and ECP claims together." (Id. at 43).

Neither of these grounds supports a finding of vacatur. The Arbitration Agreement provided that the Tribunal "shall not be bound by any formal rules of evidence," and "shall have the power to fix procedural rules relating to conduct of the Arbitration." (Exhibit C to Sylvester Dec.). In addition, the Tribunal's rejection of deposition testimony served to reduce the number of witnesses testifying, arguably enhancing the "streamlined" nature of the arbitration process. Further, the Arbitration Agreement requires the Tribunal to provide a "reasoned, written explanation" for its decision, and Christiana does not show that the Tribunal's written decision issued on November 3, 2011 fails to live up to this standard. In short, similar to the deficiencies in Christiana's "manifest disregard" of the law claims above, Christiana's claims do not adequately show that the Tribunal intentionally defied a binding provision of the parties' Arbitration Agreement.

## CONCLUSION

After considering all of Christiana's arguments for vacating the Arbitration Award, the Court finds them to be without merit. Therefore, the petition to confirm the Arbitration Award is GRANTED [docket number 35], and the cross-petition to vacate the Arbitration Award is DENIED [docket number 38].

Dated:   New York, New York
         April 12, 2012

SO ORDERED.

_____
ANDREW L. CARTER, JR.
United States District Judge